IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LARRY G. REYNOLDS,**

      Plaintiff,

vs.                                                          Civ. No. 03-326 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision filed July 28, 2003. Docket No.12. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken and will be granted.

**I. PROCEDURAL RECORD**

Plaintiff, Larry G. Reynolds, filed an application for Supplemental Security Income on July 24, 2001 and an application for Social Security disability insurance on August 31, 2001. Tr. 71-73 and 307-13. He is alleging a disability since September 20, 2000, due to hypertension, severe angina, total deafness in left ear and severe peripheral vision. Tr. 81. His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing July 9, 2002. At the hearing, the Plaintiff was unrepresented. On August 5, 2002, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R.§ 404.1520(a)-(f) and <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir.

1

1993): the claimant has not engaged in post-onset substantial gainful activity; the claimant has an impairment or combination of impairments considered "severe;" the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations, although generally credible, do not support a finding of disability; the claimant is not able to perform his past relevant work; the claimant has the residual functional capacity to perform a significant range of light work; Medical-Vocational Rule 202.18 directs a finding of not disabled and the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. Tr. 14-20.

The ALJ entered his decision on August 5, 2002. Thereafter, the Plaintiff filed a request for review. On January 22, 2003, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr.7. The Plaintiff subsequently filed his Complaint for court review of the ALJ's decision on March 14, 2003.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months,

which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1)  he is not engaged in substantial gainful employment; 2)  he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3)  his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. Id.

### III.  MEDICAL HISTORY

At the time of the decision, Plaintiff was a 48 year old individual with an 11th grade education.  His past work experience was as an animal control officer and painter.

Plaintiff was treated for chest pain in May of 2001.  He underwent cardiac catheterization on May 24, 2001.  He had no significant coronary artery stenosis, except a "90+% Ostila Stenosis of a large proximal 1st Septal Perforator."  Tr. 174.  He was again seen on June 8, 2001 with headaches and recurring chest pain. Dr. Kent L. Richards noted that the Plaintiff had headaches probably due to the nitroglycerin patch. Id.  Dr. Richards changed Plaintiff's medication and reduced his nitroglycerin patch.  He also recommended a stress test to rule out ischemia.

Plaintiff underwent audiometric testing on February 29, 2000.  The results showed a mild hearing loss in the right ear and a severe, mixed hearing loss in the left ear.  Speech reception thresholds were in good agreement with pure tone findings bilaterally.  Word recognition ability was good in the right hear and fair in the left ear. Pure tone testing thresholds showed a significant decrease at 2000 Hz in the left ear.  Tr. 200-01.

On September 27, 2000, the Plaintiff underwent a consultative eye examination.  The physician found that Plaintiff had a "bilateral field constriction."  Tr. 183.  The physician noted that Plaintiff's MRI of the brain was normal and suspects that this may be "a very unusual case of optic neuritis."  Id.

## IV. DISCUSSION

Plaintiff asserts that the ALJ failed to develop the record and did not make a proper residual functional capacity finding.  The ALJ has a basic duty of inquiry. "It is also the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits..."  Sims v. Apfel, 530 U.S. 130 (2000).  There is a heightened duty when the Plaintiff is unrepresented. Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992(quoting Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987).   In this matter the issue is whether the ALJ asked sufficient questions to ascertain "(1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." Id. at 1375. A review of the transcript of the hearing shows that the ALJ failed to ask sufficient questions to fulfill his duty to develop the record.  Tr. 25-52.

The ALJ found that Plaintiff's coronary artery disease, mild hearing loss, visual impairment and depression were severe impairments. Tr. 16.  The ALJ had a duty to inquire in the administrative

hearing as to these conditions, treatment, medication and daily routines.

<u>Coronary heart disease</u>.

The transcript reveals that the ALJ asked the following questions regarding Plaintiff's coronary heart disease:

```
Q    Okay. What kind of problems are you having that affect your ability to work?
A    Well, I've got – I get angina, real, real bad angina. I can't lift my arms up over my head. I–
Q    Okay.
A    I'm in a lot of pain.
Q    Now, you've had some surgeries, right?
A    No sir. They've done heart catheterization on –
Q    Just catheterization?
A    Right. And the– when they were up in there, they found that I had an artery that was 90 plus clogged, something like that. No sir. I've never had surgery.
Q    Okay. No surgery, just catheterization?
A    Two of them.
Q    Have they put any stents in?
A    No, sir.
Q    All right. Any other problems?
```
Tr. 38.

```
Q    Okay. Now the doctor, in his last report here, seems to feel like you are doing fairly well. Says that – it says with regard to your chest x-ray and the right lower extremity arterial Doppler findings were normal right and lower extremity arterial Doppler with no evidence of arterial insufficiency based on what he performs of full velocity. This was a – this was in March. Have you had any catheterization since March?
A    No, sir.
Q    Okay. Any hospitalizations?
A    No, sir.
Q    Any emergency rooms or anything like that?
A    No, sir.
Q    Okay. All right. Anything else we need to talk about?
```
Tr. 50.

The ALJ should have asked follow-up questions concerning the frequency, severity and duration of the angina and whether there were other symptoms such as fatigue or dyspnea indicating difficulty breathing. Furthermore, he should have asked how often Plaintiff takes nitroglycerin, how

5

much, whether the nitroglycerin provides relief and if the Plaintiff suffered any side effects from the nitroglycerin or any of his other heart medications. Other avenues of inquiry should include what activity causes angina and the effect of stress on Plaintiff's angina.

<u>Mild hearing loss</u>.

The ALJ asked the following questions regarding Plaintiff's hearing loss:

```
Q    Can you – you have a little hearing problem?  Is that correct?
A    I'm completely deaf out of this ear.
Q    Ye, sir.  I had a mastoidectomy with a drill.
Q    Okay, Can you hear out of your right ear?
A    Yes, sir.
Q    Do you use any canes or crutches to help you get around?
```

Tr. 34.

As discussed above, audiometric testing showed that Plaintiff had mild hearing loss in the right ear and a severe, mixed hearing loss in the left ear. The ALJ did not ask any questions on how this hearing loss effected the Plaintiff's daily routine and activities. He should have asked questions regarding Plaintiff ability to hear over the telephone, whether he needs to look at a speaker to hear, whether background noise makes it more difficult to hear, etc.

<u>Visual impairment</u>.

Concerning this severe impairment, the ALJ asked the following questions:

```
Q    Now, can you see okay?
A    Not – somewhat.  Not really.
Q    Do you need glasses?
A    I got some here.
Q    With the glasses can you see okay?
A    My prescription has gone bad.  Only –
Q    Changed?
A    Yes, sir.  The only thing I can see is the bifocal part.
Q    Okay.
A    So I can read.  I can't see from the top part.
```

   Q Can you--you have a little hearing problem? Is that correct?"
Tr. 34.
   Q Any other problem?
   A I– I'm losing my vision. I haven't had a change to go see a doctor for that. I was sent to a couple of eye doctors and I don't have any kind of medical insurance and stuff, so the last doctor that saw me things that I'm having – I have glaucoma and stuff, but I haven't been able to –
   Q Well –
   A – follow up on it.
   Q – you have – that pressure test on that--
   A Yes, sir.
   Q – and see what the –
   A Right. Right.
   Q Any other problems?

Tr. 39.

Again, as discussed above, the Plaintiff has a problem with his vision. The ALJ should have inquired as to how this impacted his ability to read and other daily activities.

Headaches.

Even though the record established a history of headaches, the ALJ did not ask any questions relating to this problem. Tr. 87, 153, 174, , 177-178 and 249. The ALJ should have asked about the frequency, severity, and duration of the headaches, what the Plaintiff does for relief and his ability to function with a headache.

Clearly the ALJ failed to ask sufficient questions to fulfill his duty to develop the record for the Plaintiff who is *pro se*. The Court notes that Plaintiff is now represented by counsel and counsel had stated that Plaintiff will request an residual functional capacity assessment from a treating physician. As this case will be remanded, the Court does not need to address Plaintiff's assertion that the ALJ did not make a proper residual functional capacity finding.

   **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand

Administrative Decision is granted for proceedings consistent with this memorandum opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**